IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ALFREDO RAMOS, an individual,<br>WINNIE RAMOS, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>CHASE HOME FINANCE, a Business<br>Entity, form unknown, FIRST<br>MAGNUS FINANCIAL<br>CORPORATION, a Business Entity,<br>form unknown; CHARTER FUNDING,<br>a Business Entity, form unknown,<br>TITLE GUARANTY ESCROW<br>SERVICES, INC., a Business Entity,<br>form unknown; MORTGAGE<br>ELECTRONIC REGISTRATION<br>SYSTEMS, INC., a Business Entity,<br>form unknown,<br><br>Defendants.<br>_____ | CIVIL NO. 11-00050 JMS/KSC<br><br>ORDER (1) GRANTING<br>DEFENDANT TITLE GUARANTY<br>ESCROW SERVICES, INC.'S<br>MOTION TO DISMISS<br>COMPLAINT FILED APRIL 14,<br>2011 AND/OR FOR JUDGMENT<br>ON THE PLEADINGS; (2)<br>DISMISSING OTHER CLAIMS;<br>AND (3) GRANTING LEAVE TO<br>AMEND AS TO CERTAIN<br>COUNTS |

## ORDER (1) GRANTING DEFENDANT TITLE GUARANTY ESCROW SERVICES, INC.'S MOTION TO DISMISS COMPLAINT FILED APRIL 14, 2011 AND/OR FOR JUDGMENT ON THE PLEADINGS; (2) DISMISSING OTHER CLAIMS, AND (3) GRANTING LEAVE TO AMEND AS TO CERTAIN COUNTS

## I. INTRODUCTION

On April 14, 2011, Plaintiffs Alfredo and Winnie Ramos

("Plaintiffs"), proceeding *pro se*, filed an Amended Complaint against Defendants

Chase Home Finance ("Chase"), First Magnus Financial Corporation ("First Magnus"), Charter Funding, Title Guaranty Escrow Services, Inc. ("Title Guaranty"),[1] and Mortgage Electronic Registration Systems ("MERS"). The Amended Complaint alleges federal and state law claims stemming from a November 1, 2005 mortgage transaction concerning real property located at 53-3976 South Kupa Place, Kapaau, Hawaii (the "subject property"). It seeks declaratory and injunctive relief, as well as damages and rescission of the mortgage transaction.

Title Guaranty seeks dismissal of all counts. No other party has officially appeared in the action.[2] For the reasons set forth below, the court GRANTS the Motion with leave to amend as to certain claims. Given obvious deficiencies as to all Defendants, certain claims are dismissed where appropriate as to all Defendants.

///

///

---

[1] The Amended Complaint is substantially similar to Plaintiffs' original Complaint, which was filed on January 21, 2011. Doc. No. 1. The Amended Complaint, however, named Chase as a Defendant in place of "J.P. Morgan Chase" and corrected the caption by replacing "Itle Guaranty" with "Title Guaranty."

[2] Counsel made a special appearance for Chase at a status conference, Doc. No. 24, and it is unclear whether Chase has been properly served.

## II. __BACKGROUND__

### A.     Factual Background

The court assumes the Amended Complaint's factual allegations are true for purposes of this Motion. *See, e.g.*, *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003).

According to the Amended Complaint, on November 1, 2005, Plaintiffs entered into a loan repayment and security agreement with First Magnus for $335,000. *See* Doc. No. 15, Am. Compl. ¶ 3. Plaintiffs' claims stem from the consummation of this transaction.

Plaintiffs assert, among other things, that (1) First Magnus qualified Plaintiffs for a loan which it knew Plaintiffs were not qualified for and could not repay, and that Plaintiffs "should have been declined for this loan," *id.* ¶¶ 21, 24, 29; (2) First Magnus failed to verify that Plaintiffs could repay the loan; *id.* ¶¶ 22-24; (3) the terms of the transaction were not clear and Defendants never explained the transaction to them, *id.* ¶ 25; (4) the loan was more expensive than alternative financing arrangements for which Plaintiffs could have qualified, *id.* ¶ 21; and (5) Defendants charged excessive or illegal fees. *Id.* ¶ 26.

Plaintiffs assert that Defendants failed to provide forms and disclosures required under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et*

*seq.*; the Equal Opportunity Credit Act; "Fair Lending/Fair Debt Collection Act"; and the Real Estate Settlement Practices Act ("RESPA"), 12 U.S.C. § 2601 *et seq.* Am. Compl. ¶¶ 12, 14. Defendants allegedly "intentionally concealed the negative implications of the loan they were offering," *id.* ¶ 19, and "failed to perform their due diligence in investigat[ing] the legal requirements that this loan should have been processed within." *Id.* ¶ 20. The misconduct was such that Plaintiffs were sold "a deceptive loan product" and the acts of deception created an illegal loan and constituted predatory lending. *Id.* ¶¶ 23, 28(2).[3] Defendants' acts allegedly were in violation of federal and state law, including bad faith, breach of fiduciary duty, and unfair and deceptive trade practices.

## B.    Procedural Background

Plaintiffs filed suit on January 21, 2011, and an Amended Complaint was filed on April 14, 2011. Plaintiffs' Amended Complaint alleges nine separate counts, entitled: (1) Declaratory Relief; (2) Injunctive Relief; (3) Contractual Breach of Implied Covenant of Good Faith and Fair Dealing; (4) Violations of TILA; (5) Violations of RESPA; (6) Rescission; (7) Unfair and Deceptive Acts and

---

[3] The paragraphs in the Amended Complaint are misnumbered beginning on its page nine, Doc. No. 15, at 10. The paragraph numbering goes from 32 back to 28 and then begins in sequence again. That is, there are duplicate paragraph numbers 28 to 32. The reference "28(2)" above is the second paragraph 28, at pages nine and ten of the Amended Complaint. Doc. No. 15, at 10-11.

Practices (UDAP); (8) Breach of Fiduciary Duty; (9) "Unconscionability -- UCC-2-3202"; (10) Predatory Lending; (11) Quiet Title; and (12) "Lack of Standing; Improper Fictitious Entity."

On June 17, 2011, Title Guaranty filed its Motion to Dismiss and/or for Judgment on the Pleadings, Doc. No. 20, seeking dismissal of all counts. The Motion was originally set for hearing on August 22, 2011, and Plaintiffs were specifically notified that an Opposition was due by August 1, 2011. Doc. No. 21. Plaintiffs also acknowledged the need for an Opposition to Title Guaranty's Motion, while appearing at a July 11, 2011 status conference before Magistrate Judge Kevin Chang. Doc. No. 24. Nevertheless, Plaintiffs did not file an Opposition. Pursuant to Local Rule 7.2(d), the court determines the Motion without a hearing.

## III.  STANDARDS OF REVIEW

### A.  Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ---- , 129 S. Ct. 1937, 1949 (2009) (quoting *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1949. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief. *Id.* at 1950.

The court liberally construes pro se pleadings. *See Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987). "Unless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

The court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on its own motion. *See Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987) ("A trial court may dismiss a claim *sua sponte* under

[Rule] 12(b)(6). Such a dismissal may be made without notice where the claimant cannot possibly win relief."); *Ricotta v. California*, 4 F. Supp. 2d 961, 968 n.7 (S.D. Cal. 1998) ("The Court can dismiss a claim *sua sponte* for a Defendant who has not filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6)."); *see also Baker v. Director, U.S. Parole Comm'n*, 916 F.2d 725, 727 (D.C. Cir. 1990) (holding that a district court may dismiss cases *sua sponte* pursuant to Rule 12(b)(6) without notice where plaintiff could not prevail on complaint as alleged).

## B.    Federal Rule of Civil Procedure 9(b)

Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." "Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 (9th Cir. 1994) (en banc) (emphasis in original), *superseded on other grounds by* 15 U.S.C. § 78u-4.

In their pleadings, Plaintiffs must include the time, place, and nature of the alleged fraud; "mere conclusory allegations of fraud are insufficient" to satisfy this requirement. *Id.* (citation and quotation signals omitted). Where there are multiple defendants, Plaintiffs cannot "lump multiple defendants together" and instead must "differentiate their allegations [between defendants]." *Destfino v.*

*Kennedy*, 630 F.3d 952, 958 (9th Cir. 2011) (citation omitted).  However, "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally."  Fed. R. Civ. P. 9(b); *see also In re GlenFed, Inc. Sec. Litig*, 42 F.3d at 1547 ("We conclude that plaintiffs may aver scienter . . . simply by saying that scienter existed."); *Walling v. Beverly Enter.*, 476 F.2d 393, 397 (9th Cir. 1973) (Rule 9(b) "only requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." (citations omitted)).

A motion to dismiss for failure to plead with particularity is the functional equivalent of a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).  In considering a motion to dismiss, the court is not deciding the issue of "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support claims."  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800 (1982).

///

///

///

///

# IV. **DISCUSSION**

Most, if not all, of the arguments raised by Title Guaranty were addressed in several of this court's recent Orders regarding similar complaints.[4] *See, e.g.*, *Hoilien v. Bank of Am.*, 2011 WL 2518731 (D. Haw. June 23, 2011); *Kelly v. Bank of Am.*, 2011 WL 2493048 (D. Haw. June 22, 2011); *Hoilien v. Bank of Am.*, 2011 WL 976699 (D. Haw. Mar. 17, 2011); and *Marzan v. Bank of Am.*, --- F. Supp. 2d ---- , 2011 WL 915574 (D. Haw. Mar. 10, 2011). The court draws extensively from these earlier Orders.[5]

## A. **Preliminary Argument -- Failure to Make Allegations Against Particular Defendants**

As an initial matter, Title Guaranty argues that the Amended Complaint should be dismissed because the individual Counts of the Amended Complaint, for the most part, do not allege wrongdoing as to Title Guaranty. Although Plaintiffs allege Title Guaranty was the escrow and title company

---

[4] Multiple complaints have been filed with the court by pro se plaintiffs, all alleging similar causes of action and attaching a "Forensic Audit Report" by Francha Services, LLC.

[5] The Amended Complaint also mentions the Equal Opportunity Credit Act, Am. Compl. ¶ 12; the "Fair Lending/Fair Debt Collection Act," *id.*; and the Federal Trade Commission Act, *id.* ¶ 29. Plaintiffs, however, assert no claims for relief (*i.e.*, no Counts) for any alleged violations of those federal laws. The Complaint as written therefore fails to state a claim for violations of those statutes. *Cf. Bautista v. Los Angeles Cnty.*, 216 F.3d 837, 840-41 (9th Cir. 2000) ("Courts have required separate counts where multiple claims are asserted, where they arise out of separate transactions or occurrences, and where separate statements will facilitate a clear presentation.") (citations omitted).

involved with the November 1, 2005 loan transaction for the subject property, Plaintiffs only specifically mention Title Guaranty in paragraphs six and twenty of the Amended Complaint.  Rather, each Count of the Amended Complaint (other than Count XII against MERS) is alleged generally as against "Defendants" or "All Defendants" with little effort made to distinguish between different Defendants, much less as to specific wrongdoing by Title Guaranty.

The Amended Complaint fails to make particular allegations as to Title Guaranty and therefore fails to state a claim that is plausible on its face as to Title Guaranty.  The Amended Complaint leaves completely unanswered how Title Guaranty participated in the post-mortgage events.  The court could grant the Motion on this basis alone -- the Amended Complaint simply fails to state a claim against Title Guaranty.  Nevertheless, Title Guaranty also analyzes each specific Count, and makes arguments not only as to how the Counts do not state claims against it, but that would apply to other Defendants who have not appeared.  The court therefore proceeds to analyze each Count, so that Plaintiffs can address these issues, if possible, in a Second Amended Complaint.[6]

---

[6] Although no Defendant besides Title Guaranty has entered an official appearance in the action, where appropriate the court *sua sponte* dismisses other Defendants for the same reasons set forth by Title Guaranty.  *See Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742-43 (9th Cir. 2008) (upholding dismissal in favor of a party which had not appeared, on the basis of facts presented by other defendants which had moved to dismiss) (citations omitted); *Omar v.*

(continued...)

**B.    Individual Counts of the Amended Complaint**

### *1.    Counts I and II -- Declaratory and Injunctive Relief*

Title Guaranty argues, among other things, that Count I (Declaratory Relief) and Count II (Injunctive Relief) fail to state claims upon which relief can be granted because the claims are remedies, not independent causes of action.  The court agrees that these Counts fail to state a claim.

The court follows the well-settled rule that a claim for "injunctive relief" standing alone is not a cause of action.  *See, e.g.*, *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of action."); *Henke v. Arco Midcon, L.L.C.*, 750 F. Supp. 2d 1052, 1059-60 (E.D. Mo. 2010) ("Injunctive relief, however, is a remedy, not an independent cause of action."); *Plan Pros, Inc. v. Zych*, 2009 WL 928867, at *2 (D. Neb. Mar. 31, 2009) (stating that "no independent cause of action for injunction exists"); *Motley v. Homecomings Fin., LLC*, 557 F. Supp. 2d 1005, 1014 (D. Minn. 2008) (same).  Injunctive relief may be available if Plaintiffs are entitled to such a remedy on an independent cause of action.

---

[6](...continued)
*Sea-Land Serv.*, 813 F.2d 986, 991 (9th Cir. 1987) ("A trial court may dismiss a claim *sua sponte* under [Rule] 12(b)(6).  Such a dismissal may be made without notice where the claimant cannot possibly win relief.").

As for declaratory relief, Count I is apparently seeking relief under the Declaratory Judgment Act, 28 U.S.C. § 2201.[7]  Count I alleges that "[a]n actual controversy has arisen and now exists between Plaintiffs and Defendants regarding their respective rights and duties, in that Plaintiffs contend[] that Defendants did not have the right to foreclose on the Subject Property[.]"  Am. Compl. ¶ 32. Plaintiffs ask the court to declare that "the purported power of sale contained in the Loan [is] of no force and effect at this time" because of "numerous violations of State and Federal laws designed to protect borrowers[.]"  *Id.* ¶ 33.  "As a result of Defendants' actions, Plaintiffs have suffered damages . . . and seek[] declaratory relief that Defendants' purported power of sale is void[.]"  *Id.* ¶ 34.

Given these allegations, Plaintiffs' declaratory relief claim is not cognizable as an independent cause of action under the Declaratory Relief Act. *See Seattle Audubon Soc. v. Moseley*, 80 F.3d 1401, 1405 (9th Cir. 1996) ("A declaratory judgment offers a means by which rights and obligations may be

---

[7]  The Declaratory Judgment Act provides in pertinent part:

> a) In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

adjudicated in cases brought by any interested party involving an actual controversy that has not reached a stage at which either party may seek a coercive remedy and in cases where a party who could sue for coercive relief has not yet done so." (citation and quotation signals omitted)). That is, because Plaintiffs' claims are based on allegations regarding Defendants' past wrongs, a claim under the Declaratory Relief Act is improper and in essence duplicates Plaintiffs' other causes of action. *See, e.g.*, *Ballard v. Chase Bank USA, NA*, 2010 WL 5114952, at *8 (S.D. Cal. Dec. 9, 2010) ("A claim for declaratory relief 'rises or falls with [the] other claims.'") (citation omitted); *Mangindin v. Wash. Mut. Bank*, 637 F. Supp. 2d 700, 707 (N.D. Cal. 2009) ("A claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action."); *Ruiz v. Mortg. Elec. Registration Sys., Inc*., 2009 WL 2390824, at *6 (E.D. Cal. Aug. 3, 2009) (dismissing claim for declaratory judgment where foreclosure already occurred such that the plaintiff was seeking "to redress past wrongs"); *Edejer v. DHI Mortg. Co.*, 2009 WL 1684714, at *11 (N.D. Cal. June 12, 2009) ("Plaintiff's declaratory relief cause of action fails because she seeks to redress past wrongs rather than a declaration as to future rights.").

   Accordingly, the court DISMISSES Counts I and II without leave to amend. If Plaintiffs eventually prevail on an independent claim, the court will

necessarily render a judgment setting forth (*i.e.*, "declaring") as such and providing

appropriate remedies. Similarly, if injunctive relief is proper, it will be because

Plaintiffs prevail -- or have met the necessary test for such relief under Rule 65 of

the Federal Rules of Civil Procedure -- on an independent cause of action. This

dismissal is as to all Defendants because Plaintiffs cannot prevail on these Counts

as to any Defendant.

## 2. *Count III -- Covenant of Good Faith and Fair Dealing*

Count III is entitled "Contractual Breach of the Implied Covenant of

Good Faith and Fair Dealing." Plaintiffs allege that every contract imposes a duty

of good faith and fair dealing "in its performance and its enforcement," Am.

Compl. ¶ 41, and that Defendants "willfully breached their implied duty of good

faith and fair dealing" by engaging in the acts alleged in the Amended Complaint

(such as withholding disclosures or information, and "willfully plac[ing] Plaintiffs

in a loan that [they] did not qualify for"). *Id.* ¶ 44.

This claim asserts the tort of "bad faith." *See Best Place v. Penn Am.*

*Ins. Co.*, 82 Haw. 120, 128, 920 P.2d 334, 342 (1996) (adopting tort of bad faith

for breach of implied covenant of good faith and fair dealing in an insurance

contract). But, although bad faith is an accepted tort where the plaintiff is a party

to an insurance contract, the tort has not been recognized in Hawaii based upon a

mortgage loan contract. *See Jou v. Nat'l Interstate Ins. Co. of Haw.*,

114 Haw. 122, 129, 157 P.3d 561, 568 (Haw. App. 2007) (explaining that "the

Hawaii Supreme Court emphasized that the tort of bad faith, as adopted in [*Best*

*Place v. Penn Am. Ins. Co.*, 82 Haw. 120, 128, 920 P.2d 334, 342 (1996),] requires

a contractual relationship between an insurer and an insured" (citations omitted)).

Moreover, although commercial contracts for "sale of goods" also

contain an obligation of good faith in their performance and enforcement, this

obligation does not create an independent cause of action. *See Stoebner Motors,*

*Inc. v. Automobili Lamborghini S.P.A.*, 459 F. Supp. 2d 1028, 1037-38 (D. Haw.

2006). And Hawaii courts have noted that "[o]ther jurisdictions recognizing the

tort of bad faith . . . limit such claims to the insurance context or situations

involving special relationships characterized by elements of fiduciary

responsibility, public interest, and adhesion." *Id.* at 1037 (quoting *Francis v. Lee*

*Enters.*, 89 Haw. 234, 238, 971 P.2d 707, 711 (1999)).

Importantly, even assuming a bad faith tort exists outside the

insurance context, it is well-settled that "[a] party cannot breach the covenant of

good faith and fair dealing before a contract is formed." *Contreras v. Master Fin.,*

*Inc.*, 2011 WL 32513, at *3 (D. Nev. Jan. 4, 2011) (citing *Indep. Order of*

*Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 941 (2d Cir. 1998)

15

("[A]n implied covenant relates only to the performance of obligations under an extant contract, and not to any pre-contract conduct.")).  Hawaii follows this distinction.  *See Young v. Allstate Ins. Co.*, 119 Haw. 403, 427, 198 P.3d 666, 690 (2008) (indicating the covenant of good faith does not extend to activities occurring before consummation of an insurance contract).

Thus, because all of Count III's allegations concern pre-contract activities (failing to disclosure terms, failing to conduct proper underwriting, making an improper loan to Plaintiffs), Defendants cannot be liable for bad faith. *See id.*; *see also Larson v. Homecomings Fin., LLC*, 680 F. Supp. 2d 1230, 1237 (D. Nev. 2009) ("Because Plaintiffs' claim revolves entirely around alleged misrepresentations made before the [mortgage loan] contract was entered into, [the bad faith claim] fails as a matter of law.").

And, even if Plaintiffs are attempting to assert bad faith in the performance of a contractual right to foreclose, "a court should not conclude that a foreclosure conducted in accordance with the terms of a deed of trust constitutes a breach of the implied covenant of good faith and fair dealing."  *Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 884 (N.D. Cal. 2010) (citation omitted). "The covenant [of good faith] does not 'impose any affirmative duty of moderation in the enforcement of legal rights.'"  *Id.* (quoting *Price v. Wells Fargo Bank*, 213

Cal. App. 3d 465, 479-80, 261 Cal. Rptr. 735, 742 (1989)).

Accordingly, Count III is DISMISSED. Because further amendment would be futile, dismissal of Count III is without leave to amend. This dismissal is as to all Defendants.

### 3. *Count IV -- TILA*

Title Guaranty argues that Plaintiffs' TILA claims for damages and for rescission are time-barred. The court agrees.

#### a. *Damages under TILA*

Any claim for damages under TILA must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). For violations of TILA's disclosure requirements, this one-year period generally begins to run from the date of consummation of the loan. *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986). Equitable tolling may nonetheless apply in certain circumstances:

> [T]he limitations period in Section 1640(e) runs from the date of consummation of the transaction but . . . the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action. Therefore, as a general rule, the limitations period starts at the consummation of the transaction. The district courts, however, can evaluate specific claims of fraudulent concealment and equitable

tolling to determine if the general rule would be unjust or
frustrate the purpose of the Act and adjust the limitations
period accordingly.

*Id.* Where the basis of equitable tolling is fraudulent concealment, it must be pled

with particularity under Rule 9(b) of the Federal Rules of Civil Procedure. *389*

*Orange St. Partners v. Arnold*, 179 F.3d 656, 662 (9th Cir. 1999).

On its face, Plaintiffs' TILA claim for damages is time-barred unless

equitable tolling applies -- it was brought over five years from consummation of

the loan transaction. The Amended Complaint asserts only that the statute of

limitations was tolled "due to Defendants' failure to effectively provide the

required disclosures and notices." Am. Compl. ¶ 51. This allegation, assumed to

be true for purposes of this Motion, is insufficient to satisfy equitable tolling

because it would establish no more than the TILA violation itself. *See, e.g.*,

*Garcia v. Wachovia Mortg. Corp.*, 676 F. Supp. 2d 895, 906 (C.D. Cal. 2009)

("[T]he mere existence of TILA violations and lack of disclosure does not itself

equitably toll the statute of limitations."); *Jacob v. Aurora Loan Servs.*, 2010 WL

2673128, at *3 (N.D. Cal. July 2, 2010) ("[P]laintiff cannot rely on the same

factual allegations to show that Defendants violated federal statutes and to toll the

limitations periods that apply to those statutes. Otherwise, equitable tolling would

apply in every case where a plaintiff alleges violations of TILA . . . and the statutes

of limitations would be meaningless.").

The Amended Complaint pleads no facts indicating that any Defendant prevented Plaintiffs from discovering the alleged TILA violation or caused Plaintiffs to allow the filing deadline to pass.  *See, e.g.*, *O'Donnell v. Vencor Inc.*, 466 F.3d 1104, 1112 (9th Cir. 2006) ("Equitable tolling is generally applied in situations 'where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.'") (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)).  Without any factual allegations that support the inference that Plaintiffs did not have a reasonable opportunity to discover the TILA violations, the Amended Complaint, even when liberally construed, does not support tolling the statute of limitations.  *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (granting leave to amend complaint to allege lack of reasonable notice to establish diligence where the facts alleged did not foreclose lack of reasonable notice as a matter of law); *see also Meyer v. Ameriquest Mortg. Co.*, 342 F.3d 899, 902-03 (9th Cir. 2003) (rejecting argument for equitable tolling of the TILA claim because plaintiff was in full possession of all loan documents and did not allege any actions that would have prevented

discovery of the alleged TILA violations).

Accordingly, the court DISMISSES Plaintiffs' TILA claim for damages against Title Guaranty. Moreover, as to Title Guaranty, the dismissal is without leave to amend -- its only role in the transaction was as escrow agent such that it cannot be held liable for TILA violations even if the claim is not time-barred. *See, e.g.*, *In re Ameriquest Mortg. Co. Mortg. Lending Practices Litig.*, 589 F. Supp. 2d 987, 992 (N.D. Ill. 2008) (dismissing TILA claims against escrow company reasoning that TILA "imposes no such duty" and "TILA burdens only *creditors* with disclosure obligations") (citations omitted); *Manuel v. Discovery Home Loans, LLC*, 2010 WL 2889510, at *3 (N.D. Cal. July 22, 2010) (reasoning that because "neither [escrow holder nor loan servicer] was obligated to make TILA disclosures in connection with Plaintiffs' loan, neither party can be liable for violations of TILA"); *Phleger v. Countrywide Home Loans, Inc.*, 2008 WL 65771, at *6 (N.D. Cal. Jan. 4, 2008) (dismissing TILA claim because "[a]n escrow agent is not . . . a creditor for purposes of TILA") (citations omitted).

Here, however, the court does not *sua sponte* dismiss the TILA claim for damages as to the other Defendants. In this regard, the one-year statute of limitations in § 1640(e) is an affirmative defense that a defendant has the burden of raising and establishing. *See, e.g.*, *Radford v. Wells Fargo Bank*, 2011 WL

1833020, at *7 (D. Haw. May 13, 2011). Because no Defendant other than Title Guaranty has officially appeared in the action, no other Defendant has met a burden to raise this affirmative defense. *See Caniadido v. Countrywide Bank, FSB*, 2011 WL 2470640, at *8 (D. Haw. June 20, 2011) ("As the limitations period is a matter on which a defendant bears the burden, this court does not here sua sponte dismiss the damage claim against [the unserved defendant] on statute of limitations grounds.").[8]

### b. *Rescission under TILA*

As to Plaintiffs' claim for rescission pursuant to TILA, Am. Compl. ¶ 54, TILA provides a right to rescind a loan transaction "until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing [the required material disclosures.]" 15 U.S.C. § 1635(a). If the required disclosures are not provided, however, the right to rescission expires "three years after the date of consummation of the transaction or upon the sale of

---

[8] In any event, the record does not reflect that service has been properly made against any Defendant other than Title Guaranty, and it has been over 120 days since the Amended Complaint was filed. Under Federal Rule of Civil Procedure 4(m), if a complaint is not served within 120 days after filing, absent good cause, the court must dismiss the action without prejudice, or extend the time for service. Thus, although the court does not dismiss this particular claim against the unserved Defendants based on Title Guaranty's Motion, the claim may be subject to dismissal on other grounds if a Second Amended Complaint is not filed.

the property, whichever occurs first[.]" 15 U.S.C. § 1635(f).[9] Section 1635(f) is

an absolute statute of repose barring "any [TILA rescission] claims filed more than

three years after the consummation of the transaction." *Miguel v. Country Funding*

*Corp.*, 309 F.3d 1161, 1164 (9th Cir. 2002) (citing *King*, 784 F.2d at 913). That is,

the three-year period is not subject to equitable tolling. *See Beach v. Ocwen Fed.*

*Bank*, 523 U.S. 410, 412 (1998) (stating that "§ 1635(f) completely extinguishes

the right of rescission at the end of the 3-year period," even if a lender failed to

make the required disclosures).

   Plaintiffs' TILA claim for rescission is based on a November 1, 2005

loan transaction. Plaintiffs filed this action over five years later. Given that

equitable tolling cannot apply to this claim, any amendment seeking rescission

under TILA would be futile. And unlike the statute of limitations for a TILA

damages claim, which is an affirmative defense, a TILA rescission claim is

governed by a statute of repose which "permits no federal right to rescind [under

TILA], defensively or otherwise, after the [three]-year period of § 1635(f) has

run." *Beach*, 523 U.S. at 419. Section 1635(f) therefore "depriv[es] the courts of

*subject matter jurisdiction* when a § 1635 claim is brought outside the

three-year . . . period." *Miguel*, 309 F.3d at 1164 (emphasis added). Because this

---

[9] A transaction is "consummated" when a consumer becomes contractually obligated. *See Jackson v. Grant*, 890 F.2d 118, 120 (9th Cir. 1989) (citing 12 C.F.R. § 226.2(a)(13)).

court lacks subject matter jurisdiction over this TILA rescission claim, it dismisses the claim *sua sponte* as to other Defendants besides Title Guaranty.

Accordingly, the court DISMISSES Plaintiffs' claim for rescission pursuant to TILA as time-barred without leave to amend. This dismissal is as to all Defendants.

### 4.    *Count V -- RESPA*

Count V alleges a violation of RESPA. Specifically, the Amended Complaint alleges against all Defendants that "Defendants, and each of them, did give, provide or receive a hidden fee or thing of value for the referral of settlement business, including but not limited to, kickbacks, hidden referral fees, and/or Yield Spread Premiums." Am. Compl. ¶ 63. The Amended Complaint, therefore, is making a RESPA claim under 12 U.S.C. § 2607, for illegal fees at closing.[10]

Initially, to the extent that Count V claims Defendants received "excessive" fees, that claim under RESPA fails as a matter of law -- § 2607 does not prohibit "excessive" fees. *See Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 554 (9th Cir. 2010) (concluding that § 2607 "cannot be read to prohibit charging fees, excessive or otherwise, when those fees are for services that were

---

[10] Any possible claims for violations of 12 U.S.C. §§ 2603 or 2604 for failing to provide a "good faith estimate" or "uniform settlement statement" necessarily fail because there is no private cause of action for a violation of those sections. *See Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 557 (9th Cir. 2010).

actually performed").

As to other aspects of § 2607, Title Guaranty asserts that a RESPA claim is time-barred and the allegations otherwise fail to state a claim upon which relief can be granted. The court agrees that the allegations of the Amended Complaint are wholly conclusory and fail to state a claim that is plausible on its face as to Title Guaranty and as to any other Defendant. The claim is dismissed on that ground as to all Defendants.

Further, as pled, the claim is also time-barred. Specifically, the statute of limitations for a RESPA claim is either one or three years from the date of the violation, depending on the type of violation. The one-year period applies to a claim under § 2607. Title 2 U.S.C. § 2614 provides:

> Any action pursuant to the provisions of section 2605, 2607, or 2608 of this title may be brought in the United States district court or in any other court of competent jurisdiction, for the district in which the property involved is located, or where the violation is alleged to have occurred, within 3 years in the case of a violation of section 2605 of this title and 1 year in the case of a violation of section 2607 or 2608 of this title from the date of the occurrence of the violation . . . .

Although the Ninth Circuit has not addressed the precise issue, other courts -- including this court -- have found that equitable tolling may apply to a RESPA claim. *See Sakugawa v. IndyMac Bank, F.S.B.*, 2010 WL 4909574, at *4

(D. Haw. Nov. 24, 2010) (citing cases).

As with Plaintiffs' claim for damages under TILA, Plaintiffs brought this action well past either applicable statute of limitations for RESPA violations. Any illegal fee would have occurred in 2005; this action was filed in 2010. Moreover, the Amended Complaint includes no allegations suggesting that equitable tolling may apply.[11]

Accordingly, the court DISMISSES Plaintiffs' RESPA claim. The dismissal is without leave to amend as to (1) any claim under § 2607 asserting a fee was "excessive" or otherwise for services that were actually performed, or (2) any claim under §§ 2603 or 2604. Allowing such amendments would be futile. *See Martinez*, 598 F.3d at 554, 557. Otherwise, the dismissal is with leave to amend. Again, the dismissal -- without leave to amend as to claims for "excessive" fees or under §§ 2603 or 2604, and with leave to amend otherwise -- is as to all Defendants.

///

///

---

[11] As with Plaintiffs' claim for damages under TILA, the statute of limitations is an affirmative defense that a defendant has the burden of raising. Because no Defendant other than Title Guaranty has entered an official appearance, the court does not rely on this ground for dismissing Plaintiffs' RESPA claim against any Defendant other than Title Guaranty. As set forth above, however, there is an independent basis to dismiss the RESPA claim as to the other Defendants.

### 5. Count VI -- Rescission

Count VI asserts that "Plaintiffs are entitled to rescind the loan for all of the foregoing reasons: 1) TILA Violations; 2) RESPA; 3) Fraudulent Concealment; 4) Deceptive Acts and Practices (UDAP) and 5) Public Policy Grounds, each of which provides independent grounds for relief." Am. Compl. ¶ 67. Like Counts I and II, generally "[r]escission is only a remedy, not a cause of action." *Bischoff v. Cook*, 118 Haw. 154, 163, 185 P.3d 902, 911 (Haw. App. 2008). The remedy thus "rises or falls with [the] other claims." *Ballard*, 2010 WL 5114952, at *8. Indeed, as alleged here, Count VI specifically acknowledges that it is seeking rescission based upon "independent grounds for relief."

Accordingly, Count VI is DISMISSED without leave to amend. The court addresses the merits of rescission separately, when addressing any independent claims allowing rescission. The dismissal is as to all Defendants.

### 6. Count VII -- Unfair and Deceptive Acts and Practices

Count VII alleges that all Defendants are liable for Unfair and Deceptive Acts and Practices "by consummating an unlawful, unfair, and fraudulent business practice, designed to deprive Plaintiffs of [their] home, equity, as well as [their] past and future investment." Am. Compl. ¶ 74. Plaintiffs allege that Defendants "failed to undergo a diligent underwriting process," failed to

disclose matters, should not have approved their loan because they could not afford it, and had "knowledge of these facts, circumstances and risks but failed to disclose them." *Id.* ¶ 72. By alleging "Unfair and Deceptive Acts and Practices," Plaintiffs are making a claim under HRS § 480-2(a) ("Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.").

Without more, Plaintiffs' theory of an unfair practice does not state a claim under § 480-2. In granting summary judgment against a borrower on a § 480-2 claim, this court in *McCarty v. GCP Management, LLC*, 2010 WL 4812763 (D. Haw. Nov. 17, 2010), relied on the rule that "lenders generally owe no duty to a borrower 'not to place borrowers in a loan even where there was a foreseeable risk borrowers would be unable to repay.'" *Id.* at *6 (quoting *Champlaie v. BAC Home Loans Servicing, LP*, 706 F. Supp. 2d 1029, 1061 (E.D. Cal. 2009)).

And, as cited in *McCarty*, ample authority supports this proposition. *See Sheets v. DHI Mortg. Co.*, 2009 WL 2171085, at *4 (E.D. Cal. July 20, 2009) (reasoning that no duty exists "for a lender 'to determine the borrower's ability to repay the loan . . . . The lender's efforts to determine the creditworthiness and ability to repay by a borrower are for the lender's protection, not the borrower's.'"

(quoting *Renteria v. United States*, 452 F. Supp. 2d 910, 922-23 (D. Ariz. 2006) (finding that borrowers "had to rely on their own judgment and risk assessment to determine whether or not to accept the loan")). "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 283 Cal. Rptr. 53, 56 (Cal. App. 1991). Nothing in the Amended Complaint indicates that any Defendant "exceed[ed] the scope of [a] conventional role as a mere lender of money." Moreover, there are no factual allegations specifically against Title Guaranty. The claim fails on these bases alone.

Title Guaranty also argues that this claim is barred by the applicable four-year statute of limitations. *See* HRS § 480-24(a) (barring a chapter 480 claim "unless commenced within four years after the cause of action accrues"). Because the cause of action here accrued on November 1, 2005, the four-year statute of limitations has run unless Plaintiff can take benefit of tolling the statute of limitations. *See, e.g.*, *Rundgren v. Bank of N.Y. Mellon*, --- F. Supp. 2d. ----, 2011 WL 768800, at *5-7 (D. Haw. Feb. 28, 2011) (finding that claims brought pursuant to Ch. 480 may take benefit of the fraudulent concealment doctrine to toll the statute of limitations). The § 480-2 claim was filed over a year late, and the

Amended Complaint includes no allegations suggesting that equitable tolling may apply. The court, however, cannot conclude at this time that further amendment is futile and will allow Plaintiffs an opportunity to amend Count VII to attempt to state a § 480-2 claim against Title Guaranty.[12]

Accordingly, Count VII is DISMISSED with leave to amend. The dismissal is as to all Defendants.

### 7.    *Count VIII -- Breach of Fiduciary Duty*

Count VIII alleges, without distinguishing between various Defendants, that Defendants owed Plaintiffs a fiduciary duty and breached that duty by failing "to advise or notify Plaintiffs . . . that Plaintiffs would or had a likelihood of defaulting on the loan." Am. Compl. ¶ 77. Defendants also allegedly breached a fiduciary duty owed to Plaintiffs by "exercis[ing] a greater level of loyalty to each other by providing each other with financial advantages under the loan without disclosing their relation to one another[.]" *Id.* ¶ 78. Plaintiffs also allege that failure to provide material disclosures "while in the capacity of [Plaintiffs'] Lender" and "fail[ure] to fully comply with TILA and RESPA . . . are

---

[12] Like Plaintiffs' claims for damages under TILA and RESPA, this statute of limitations is an affirmative defense that a defendant has the burden of raising. Because no Defendant other than Title Guaranty has entered an official appearance, the court does not rely on this ground for dismissing Plaintiffs' Chapter 480 claim against any Defendant other than Title Guaranty. As set forth above, however, there is an independent basis to dismiss the Chapter 480 claim as to the other Defendants.

violations of a fiduciary responsibility owed to Plaintiffs by Defendants." *Id.* ¶¶

79-81.

These allegations fail to state a claim against any Defendant. In

*McCarty*, this court set forth a myriad of caselaw for the well-settled proposition

that generally a borrower-lender relationship is not fiduciary in nature:

> Lenders generally owe no fiduciary duties to their
> borrowers. *See, e.g.*, *Nymark v. Heart Fed. Sav. & Loan
> Ass'n*, 283 Cal. Rptr. 53, 54 n.1 (Cal. App. 1991) ("The
> relationship between a lending institution and its
> borrower-client is not fiduciary in nature."); *Miller v.
> U.S. Bank of Wash.*, 865 P.2d 536, 543 (Wash. App.
> 1994) ("The general rule . . . is that a lender is not a
> fiduciary of its borrower."); *Huntington Mortg. Co. v.
> DeBrota*, 703 N.E.2d 160, 167 (Ind. App. 1998) ("A
> lender does not owe a fiduciary duty to a borrower absent
> some special circumstances."); *Spencer v. DHI Mortg.
> Co.*, 642 F. Supp. 2d 1153, 1161 (E.D. Cal. 2009)
> ("Absent 'special circumstances' a loan transaction 'is at
> arms-length and there is no fiduciary relationship
> between the borrower and lender.'") (quoting *Oaks
> Mgmt. Corp. v. Super. Ct.*, 51 Cal. Rptr. 3d 561 (Cal.
> App. 2006)); *Ellipso, Inc. v. Mann*, 541 F. Supp. 2d 365,
> 373 (D. D.C. 2008) ("[T]he relationship between a debtor
> and a creditor is ordinarily a contractual relationship . . .
> and is not fiduciary in nature.") (citation omitted).

*McCarty*, 2010 WL 4812763, at *5.

Given this rule, Plaintiffs fail to state a claim for breach of fiduciary

duty as to any Defendant.[13]  As with a § 480-2 claim, nothing in the Amended

Complaint alleges "special circumstances" that might impose a fiduciary duty in

this mortgage-lending situation.  *See, e.g.*, *Shepherd v. Am. Home Mortg. Servs.,

Inc.*, 2009 WL 4505925, at *2 (E.D. Cal. Nov. 20, 2009) ("Plaintiff cites no

authority for the proposition that AHMSI or Deutsche owed a duty to not cause

plaintiff harm in their capacities as servicer and [successor] to the original lender in

ownership of the loan, respectively. . . .  In fact, loan servicers do not owe a duty to

the borrowers of the loans they service.").

   As to Title Guaranty, a title and escrow company, the "[g]eneral rule

is that [an] escrow depository occupies [a] fiduciary relationship with parties to

[the] escrow agreement or instructions and must comply strictly with the

provisions of such agreement or instructions."  *Stanton v. Bank of Am., N.A.*, 2010

WL 4176375, at *3 (D. Haw. Oct. 19, 2010) (quoting *DeMello v. Home Escrow*, 4

Haw. App. 41, 47, 659 P.2d 759, 763 (1983) (citation omitted).  But, "an escrow

---

[13]  Brokers generally owe fiduciary duties to their clients.  *See, e.g.*, *Mortensen v. Home Loan Ctr., Inc.*, 2009 WL 113483, at *4 (D. Ariz. Jan. 16, 2009) (citing cases indicating that mortgage brokers have fiduciary duties to their clients); *Brewer v. Indymac Bank*, 609 F. Supp. 2d 1104, 1119 (E.D. Cal. 2009) (same); *cf. Han v. Yang*, 84 Haw. 162, 172, 931 P.2d 604, 614 (Haw. App. 1997) ("A real estate broker is a fiduciary and consequently must exercise the 'utmost good faith, integrity, honesty, and loyalty,' and must diligently uphold a legally imposed duty of due care.") (citations omitted).  Plaintiffs assert that Charter Funding was "the original broker for the loan," Am. Compl. ¶ 5, but assert no other facts indicating, for example, whether Charter Funding was Plaintiffs' broker or whether Charter Funding otherwise owed any duties or had any dealings with Plaintiffs.  The allegations as to Charter Funding fail to state a claim for breach of fiduciary duty.

holder has no general duty to police the affairs of its depositors; rather, an escrow holder's obligations are limited to faithful compliance with [the depositors'] instructions." *Id.* (quoting *Summit Fin. Holdings, Ltd. v. Continental Lawyers Title Co.*, 27 Cal. 4th 705, 711 (Cal. 2002)). The Hawaii Supreme Court has found that where a party to a transaction in which an escrow is utilized engages in fraudulent activity, an escrow is not liable when it acts in good faith and does not have actual knowledge of wrongdoing. *Matter of Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.*, 69 Haw. 523, 529, 751 P.2d 77, 78, 81 (1988). The Amended Complaint includes no allegations supporting that Title Guaranty breached any fiduciary duty to Plaintiffs, by, for example, failing to follow the provisions of any particular agreement or instructions.

Accordingly, Count VIII is DISMISSED with leave to amend as to all Defendants.

### 8. *Count IX -- Unconscionability*

Title Guaranty next argues that Count IX entitled "Unconscionability -- UCC-2-3202" fails to state a claim. Count IX asserts that courts may refuse to enforce a contract or portions of a contract that are unconscionable, Am. Compl. ¶ 83, and courts are to give parties an opportunity to present evidence regarding a contract's "commercial setting, purpose and effect" to determine if a contract is

unconscionable. *Id.* ¶ 84. It alleges the following facts:

> Here, based on the deception, unfair bargaining position,
> lack of adherence to the regulations, civil codes and
> federal standards that the Defendants were required to
> follow; coupled with the windfall that the Defendants
> reaped financially from their predatory practices upon
> Plaintiff's [sic], the court may find that the loan
> agreement and trust deed are unconscionable and of no
> force or effect.

*Id.* ¶ 85.

"Unconscionability" is generally a defense to the enforcement of a

contract, and is not a proper claim for affirmative relief. *See, e.g.*, *Gaitan v. Mortg.*

*Elec. Registration Sys.*, 2009 WL 3244729, at *13 (C.D. Cal. Oct. 5, 2009)

("Unconscionability may be raised as a defense in a contract claim, or as a legal

argument in support of some other claim, but it does not constitute a claim on its

own."); *Carey v. Lincoln Loan Co.*, 125 P.3d 814, 829 (Or. App. 2005)

("[U]nconscionability is not a basis for a separate claim for relief."); *see also*

*Barnard v. Home Depot U.S.A., Inc.*, 2006 WL 3063430, at *3 n.3 (W.D. Tex. Oct.

27, 2006) (citing numerous cases for the proposition that neither the common law

or the UCC allows affirmative relief for unconscionability).

To the extent unconscionability can be addressed affirmatively as part

of a different -- that is, independent -- cause of action, such a claim "is asserted to

prevent the enforcement of a contract whose *terms* are unconscionable." *Skaggs v.*

*HSBC Bank USA, N.A.*, 2010 WL 5390127, at *3 (D. Haw. Dec. 22, 2010) (emphasis in original).[14] *Skaggs* dismissed a "claim" for unconscionability because it challenged only conduct such as "obtaining mortgages under false pretenses and by charging Plaintiff inflated and unnecessary charges," and "failing to give Plaintiff required documents in a timely manner," but not any specific contractual term. *Id.* Likewise, Count IX fails to challenge any particular term as unconscionable in an affirmative claim where the unconscionable terms may be relevant to that particular claim. Further, as to Title Guaranty, it was not part of the contract process but rather only the escrow agent.

Accordingly, Count IX is DISMISSED with leave to amend as to all Defendants except Title Guaranty. The dismissal as to Title Guaranty is without leave to amend because it is not enforcing any contract with Plaintiffs.

///

///

---

[14] In *Skaggs*, this court noted in dicta that "at least one Hawaii court has addressed unconscionability when raised as a claim seeking rescission." 2010 WL 5390127, at *3 n.2 (citing *Thompson v. AIG Haw. Ins. Co.*, 111 Haw. 413, 142 P.3d 277 (2006)). The court did not mean to suggest that an affirmative claim for "unconscionability" without more is a proper cause of action. Even in *Thompson*, the operative complaint did not assert a separate *count* for rescission or unconscionability. *See Thompson*, 111 Haw. at 417, 142 P.3d at 281 (indicating the specific counts were for negligence, fraud, breach of duty, and unfair and deceptive trade practices under HRS § 480-2). In *Thompson*, the remedy of rescission was based on an independent claim.

### 9.     *Count X -- Predatory Lending*

Title Guaranty also challenges Count X entitled "Predatory Lending." Count X repeats a variety of allegations (*e.g.*, failure to disclose terms and conditions or material facts, targeting of unsophisticated persons, unfair loan terms, and improper underwriting) that form the basis of other causes of action.

Courts, however, have found that there is no common law claim for "predatory lending."  *See Haidar v. BAC Home Loans Servicing, LP*, 2010 WL 3259844, at *2 (E.D. Mich. Aug. 18, 2010) (agreeing that "there is no cause of action for predatory lending"); *Pham v. Bank of Am., N.A.*, 2010 WL 3184263, at *4 (N.D. Cal. Aug. 11, 2010) ("There is no common law claim for predatory lending").  To the extent such "predatory" practices provide a claim for relief, they appear to be grounded in another statutory or common-law cause of action such as fraud -- the term "predatory lending" is otherwise too broad.  *See Vissuet v. Indymac Mortg. Servs.*, 2010 WL 1031013, at *3 (S.D. Cal. Mar. 19, 2010) (dismissing claim for "predatory lending" with leave to amend -- agreeing that the term is expansive and fails to provide proper notice, where Defendants "are left to guess whether this cause of action is based on an alleged violation of federal law, state law, common law, or some combination"); *see also Hambrick v. Bear Stearns Residential Mortg.*, 2008 WL 5132047, at *2 (N.D. Miss. Dec. 5, 2008)

(dismissing a claim for predatory lending where plaintiffs failed to cite any "[state] or applicable federal law, precedential or statutory, creating a cause of action for 'predatory lending.' The court is unaware of any such cause of action.").

The court finds these authorities persuasive. Count X fails to state a cause of action. The court does not mean to imply that "predatory lending" is proper and cannot form the basis of some cause of action. But Hawaii courts have not recognized "predatory lending" itself as a common-law cause of action, and the precise elements of such a claim are undefined. The ambiguous term "predatory lending" potentially encompasses a wide variety of types of alleged wrongdoing. Recognizing a cause of action here would thus fail to provide proper notice. *See Vissuet*, 2010 WL 1031013, at *3.

Accordingly, Count X is DISMISSED with leave to amend to allow an opportunity for Plaintiffs to attempt to state a cause of action based on specific activities (which others might otherwise describe as "predatory") under a recognized statutory or common-law theory as to all Defendants except Title Guaranty. The dismissal as to Title Guaranty is without leave to amend because as an escrow agent, Title Guaranty was not involved in the transaction as a lender and therefore its acts will not support such claim.

### 10. Count XI -- Quiet Title

Count XI alleges that Defendants have "no legal or equitable right, claim, or interest in the Property," Am. Compl. ¶ 102, and therefore Plaintiffs are entitled to a declaration that "the title to the Subject Property is vested in Plaintiff's [sic] alone[.]" *Id.* ¶ 103.

The court infers that Plaintiffs are making a claim under HRS § 669-1(a) ("[Quiet title] [a]ction may be brought by any person against another person who claims, or who may claim adversely to the plaintiff, an estate or interest in real property, for the purpose of determining the adverse claim."). The court agrees with Title Guaranty that Plaintiffs have not alleged sufficient facts regarding interests of various parties to make out a cognizable claim for "quiet title." Plaintiffs have merely alleged elements of § 669-1, and thus the Count fails to state a claim. *See Iqbal*, 129 S. Ct. at 1949 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient.).

Further, in order to assert a claim for "quiet title" against a mortgagee, a borrower must allege they have paid, or are able to tender, the amount of indebtedness. "A basic requirement of an action to quiet title is an allegation that plaintiffs 'are the rightful owners of the property, *i.e.*, that they have satisfied their

obligations under the deed of trust.'" *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 975 (N.D. Cal. 2010) (quoting *Kelley v. Mortg. Elec. Registration Sys.*, 642 F. Supp. 2d 1048, 1057 (N.D. Cal. 2009)). "[A] borrower may not assert 'quiet title' against a mortgagee without first paying the outstanding debt on the property." *Id.* (applying California law -- *Miller v. Provost*, 26 Cal. App. 4th 1703, 1707, 33 Cal. Rptr. 2d 288, 290 (1994) ("a mortgagor of real property cannot, without paying his debt, quiet his title against the mortgagee") (citation omitted), and *Rivera v. BAC Home Loans Servicing, L.P.*, 2010 WL 2757041, at *8 (N.D. Cal. July 9, 2010)).

Applying this law here, which the court finds persuasive, Plaintiffs have not indicated that they have paid their outstanding loan balance, much less that they are able to do so. In short, they fail to state a claim for quiet title.

Accordingly, Count XI is DISMISSED with leave to amend as to all Defendants except Title Guaranty. As to Title Guaranty, this dismissal is without leave to amend because as an escrow agent, it is not asserting any right to the subject property.

### 11. *Count XII -- Lack of Standing (MERS)*

Count XII, entitled "Lack of Standing; Improper Fictitious Entity" fails to state a claim because a claim for "lack of standing" makes no sense against

a defendant. Rather, standing is a requirement for a plaintiff in order to proceed in a lawsuit.

Count XII alleges generally that MERS is an "'artificial' entity" "designed to circumvent certain laws and other legal requirements dealing with mortgage loans." Am. Compl. ¶ 107. Plaintiffs further assert that an assignment of the note or mortgage to MERS is illegal. *Id.* ¶ 108. Plaintiffs appear to be alleging that MERS may not foreclose, or has improperly foreclosed, because it is not a holder of the note. If this is the purpose of Count XII, the court will allow Plaintiffs an opportunity to clarify the factual allegations as to MERS, but not to do so as now written in this Count. Plaintiffs may, if appropriate, attempt in a Second Amended Complaint to assert alleged illegalities as to MERS' status in an independent cause of action -- not in a count entitled "Lack of Standing; Improper Fictitious Entity."

Accordingly, Count XII is DISMISSED with leave to amend as to MERS only.

## V. **CONCLUSION**

Title Guaranty's Motion is GRANTED and the Amended Complaint is DISMISSED against Title Guaranty with leave to amend as to specific counts as explained above. The dismissal also applies to the other Defendants who have not

appeared, with one exception -- Count IV for damages under TILA is only dismissed as to Title Guaranty because the dismissal is based solely on an affirmative defense that a Defendant must raise on its own behalf.

To summarize, as to each Count of the Amended Complaint, the court rules as follows:

1.  Count I for declaratory relief is dismissed without leave to amend. This dismissal is as to all Defendants.

2.  Count II for injunctive relief is dismissed without leave to amend. This dismissal is as to all Defendants.

3.  Count III, entitled "contractual breach of the implied covenant of good faith and fair dealing" is dismissed without leave to amend.  This dismissal is as to all Defendants.

4.  Count IV for damages for violations of TILA is dismissed.  The claim for damages under TILA is dismissed without leave to amend as to Title Guaranty.  This dismissal, however, is only as to Title Guaranty.  The claim for damages remains as to the other Defendants who have not entered an official appearance.

5.  Count IV for rescission under TILA is dismissed without leave to amend.  This dismissal is as to all Defendants.

6. Count V under RESPA is dismissed.  This dismissal is without leave to amend if based on violating 12 U.S.C. § 2607 for charging an "excessive" fee or if based on violating 12 U.S.C. §§ 2603 or 2604.  This dismissal is as to all Defendants.  Otherwise, the dismissal is with leave to amend.  If Plaintiffs reassert a RESPA claim against Title Guaranty, they must allege facts sufficient to support equitable tolling of the statute of limitations in 12 U.S.C. § 2614.

7. Count VI for rescission in general is dismissed without leave to amend.  This dismissal is as to all Defendants.

8. Count VII for unfair and deceptive trade practices is dismissed with leave to amend.  This dismissal is as to all Defendants.

9. Count VIII for breach of fiduciary duty is dismissed with leave to amend.  This dismissal is as to all Defendants.

10. Count IX entitled "unconscionability" is dismissed with leave to amend as to all Defendants except Title Guaranty.  As to Title Guaranty, the dismissal is without leave to amend.

11. Count X entitled "predatory lending" is dismissed with leave to amend to assert claims under recognized common-law or statutory theories, but not as a claim entitled "predatory lending."  This dismissal, however, is without leave to amend as to Title Guaranty.

12. Count XI entitled "quiet title" is dismissed with leave to amend as to all Defendants except Title Guaranty. As to Title Guaranty, the dismissal is without leave to amend.

13. Count XII entitled "lack of standing" is dismissed with leave to amend as to MERS only. As to any other Defendant, the dismissal is without leave to amend.

Plaintiffs are GRANTED until **September 19, 2011** to file a Second Amended Complaint attempting to cure the identified deficiencies. If Plaintiffs choose to file a Second Amended Complaint, they must clearly state how each named Defendant has injured them. In other words, Plaintiffs should explain, in clear and concise allegations, what each Defendant did and how those specific facts create a plausible claim for relief. Plaintiffs should not include facts that are not directly relevant to their claims. In other words, to provide proper notice, the Second Amended Complaint should allege necessary facts against specific Defendants, *i.e.*, tie each claim to a Defendant or specific Defendants and explain how each Defendant is liable.

Plaintiffs are also notified that the Second Amended Complaint supercedes the prior Complaint and must be complete in itself without reference to prior or superceded pleadings. *E.g.*, *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir.

1987) (citation omitted). That is, the Second Amended Complaint, if any, must stand alone, without reference to prior pleadings or documents in the record. For example, if a Defendant that is named in the Amended Complaint is not named in the Second Amended Complaint, that Defendant is no longer part of the action. *See, e.g.*, *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1990) ("[t]he fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original").

If Plaintiffs do not file a Second Amended Complaint by **September 19, 2011**, the action will be dismissed as against Title Guaranty, and the action will remain only as to Count IV for damages under TILA against other Defendants (subject to separate proceedings regarding service of process).

Finally, this Order limits Plaintiffs to filing a Second Amended Complaint that attempts to cure the specific deficiencies identified in this Order. That is, this Order does not grant Plaintiffs leave to amend to file a Second Amended Complaint that asserts any *different* theories or causes of action. Rather, if Plaintiffs seek to file a Second Amended Complaint that adds or substitutes different theories or claims arising out of the same conduct or transaction,

///

///

43

Plaintiffs must first file a separate Motion complying with the requirements of

Federal Rule of Civil Procedure 15, regarding amended pleadings.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, August 25, 2011.



/s/ J. Michael Seabright
_____
J. Michael Seabright
United States District Judge

*Ramos et al. v. Chase Home Fin., et al.*, Civ. No. 11-00050 JMS/KSC, Order (1) Granting Defendant Title Guaranty Escrow Services, Inc.'s Motion to Dismiss Complaint Filed April 14, 2011 And/or for Judgment on the Pleadings; (2) Dismissing Other Claims; and (3) Granting Leave to Amend as to Certain Counts

44